TRINIDAD RAMIREZ V. STATE

No. 28,311. May 9, 1956.
Appellant's Motion for Rehearing Overruled
June 27, 1956.

Appellant's Second Motion for Rehearing Overruled
(Without Written Opinion) October 10, 1956.

*McCarthy, Rose & Haynes,* Amarillo [*George S. McCarthy* of Counsel] Amarillo, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is possession of marijuana, a narcotic drug; the punishment, 5 years.

The record shows that on December 7, 1955, verdict was returned, judgment rendered, sentence pronounced and recognizance on appeal in the sum of $5,000 entered into by appellant and his bondsmen.

The record further shows that a week later motion for new trial was filed, considered and overruled. The only notice of appeal found in this record was given on December 12, 1955, when the motion for new trial was overruled.

We have then a record which affirmatively shows that appellant is enlarged upon a recognizance upon appeal entered into seven days before notice of appeal to this court was given.

Art. 816 C.C.P. provides that when the defendant appeals and where bail is allowed he shall, if he be in custody, be committed to jail unless he duly enters into recognizance to appear and that no recognizance shall be taken if the defendant is not in custody of the sheriff at the time thereof.

Art. 827 C.C.P. provides that an appeal is taken by giving notice thereof in open court and having the same entered of record.

A recognizance on appeal entered into before notice of appeal

was given is insufficient to confer jurisdiction on this court. Hallman v. State, 113 Tex. Cr. R. 100, 18 S.W. 2d 652.

The appeal is dismissed.

ON MOTION FOR REHEARING

MORRISON, Presiding Judge.

The record has now been perfected, and the case is properly before us for a consideration on its merits.

Appellant filed a motion to quash the indictment, alleging as grounds that Latin-Americans as a class had been discriminated against in the selection of the jury commission who selected the grand jury and in the selection of the grand jury which returned the indictment against him. He relies upon Hernandez v. Texas, 347 U.S. 475; 98 L. Ed. 866. We quote from said opinion:

"The petitioner's initial burden in substantiating his charge of group discrimination was to prove that persons of Mexican descent constitute a separate class in Jackson County, distinct from 'whites.' One method by which this may be demonstrated is by showing the attitude of the community. Here the testimony of responsible officials and citizens contained the admission that residents of the community distinguished between 'white' and 'Mexican'. The participation of persons of Mexican descent in business and community groups was shown to be slight. Until very recent times, children of Mexican descent were required to attend a segregated school for the first four grades. At least one restaurant in town prominently displayed a sign announcing 'No Mexicans Served'. On the courthouse grounds at the time of the hearing, there were two men's toilets, one unmarked, and the other marked 'Colored Men' and 'Hombres Acqui' (Men Here). No substantial evidence was offered to rebut the logical inference to be drawn from these facts, and it must be concluded that petitioner succeeded in his proof."

We must now determine if the facts here before us come within the rule heretofore set forth.

At the time of the trial, Negro children were segregated into a separate school in Amarillo, but Latin-American children attended the public schools for the Anglo-American children in the school nearest their residence, where they used all the

facilities available to the other children and had done so as far as this record reveals since 1898. There were no named restaurants or hotels that excluded Latin-Americans, and the Latin-Americans used the same rest rooms at the courthouse and elsewhere as did the Anglo-Americans and had always done so.

A great majority of the Latin-American people in Potter County live in one section of the city of Amarillo. As best we can determine from this record, when the Santa Fe railroad came to Amarillo it brought with it several Latin-American employees, who built their homes on and near the right-of-way, and when there was no further space there available they began to move out to Garfield and Arthur Streets, where they now reside. There is a complete absence of any showing that this selection of their residence locations was anything but voluntary. There is an entire absence of any showing of discrimination in business as between the Latin-Americans and Anglo-Americans other than some showing that a number of the Latin-Americans still worked for the Santa Fe railroad.

The Mexican Consul, while testifying for the appellant, had this to say about how his race fared in Amarillo:

"I can say that in my experience here in Amarillo, that Amarillo comes close to being like San Antonio, which is considered to be a city in Texas which is most free from racial discrimination against my people. I believe Amarillo comes pretty close to San Antonio in that respect."

He testified further that only in isolated instances did he find that the Latin-American people were set aside as a separate class in Potter County.

We have concluded that appellant has failed to meet the burden of proving that Latin-Americans constituted a separate class in Potter County distinct from Anglo-Americans.

Having so concluded, we do not feel called upon, under the holding in Hernandez v. Texas, supra, to discuss whether or not the appellant has met the burden of proving discrimination, but we do here, for the purpose of clarification, point out certain marked differences between Potter County (where this case was tried) and Jackson County (where Hernandez was tried).

Potter County had a population of 72,851 according to the

last Federal census, of which 1,847 were Spanish Americans or Mexicans, 1639 being native born and 65 naturalized citizens.

The population of Potter County has increased considerably since the 1950 census, and it was estimated that there were some 3,500 people of Mexican extraction in the county at the time of the trial.

As against this ratio of 1847 to 72,851 (which may have been altered somewhat by population increase since the 1950 census), Jackson County, where Hernandez was tried, had a population of 12,916, of which 1,865 had Latin-American names. Of these, 1738 were native born and 65 naturalized citizens.

In Potter County petit jurors are drawn from the wheel, and there is no complaint here as to discrimination in the selection of these jurors.

The stipulation in the case at bar did not cover a comparable period to that in the Hernandez case.

Officers, armed with a search warrant, went to the home of the appellant, where they found a large quantity of what was shown by the testimony of an expert to be marijuana.

The appellant did not testify or offer any evidence in his own behalf.

Bill of Exception No. 1 complains of jury argument as follows:

"It starts out here and spreads. You will find it in our high schools."

The objection was sustained, and the court instructed the jury not to consider the same.

Appellant relies upon Sparks v. State, 159 Tex. Cr. Rep. 111, 261 S.W. 2d 571, wherein we reversed a conviction because the prosecutor in his argument said, "* * * he didn't want the bugs to get it, but wanted to sell it to the school children of Gregg County." In the Sparks case, the objection to the argument was overruled. We do not conclude that the Sparks case is controlling here because we do not here have a bold assertion that the appellant intended to corrupt the morals of high school children as we did in that case. We have concluded that the

prosecutor did not commit reversible error in calling the jury's attention to a matter of common knowledge; i.e., that some marijuana finds its way into the possession of high school children.

Finding no reversible error, the appellant's motion for rehearing is overruled, and the judgment is now affirmed.